**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54121-1-II |
| Respondent, | |
| v. | |
| CHARLES RILEY BLACKETER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Charles Riley Blacketer appeals the trial court's order denying his CrR 7.8 motion to withdraw his guilty plea. Blacketer argues that his guilty plea was not made knowingly because he was not informed that he would be responsible for paying for the sex offender treatment program ordered as part of his special sex offender sentence alternative (SSOSA). In a statement of additional grounds for review, Blacketer also argues that his due process rights were violated by the court reporter's delay in transcribing the report of proceedings from his CrR 7.8 hearing. We disagree with both of Blacketer's arguments and affirm the trial court's denial of his CrR 7.8 motion.

FACTS

After the daughter of Blacketer's former girlfriend disclosed that Blacketer had repeatedly raped her from the time she was 6 until she was 15, the State charged Blacketer with first degree child rape and third degree child rape.

As the parties were conducting voir dire for a jury trial, Blacketer informed the court that he and the State had reached a resolution. Blacketer pleaded guilty to amended charges of three counts of third degree child rape. Included in his statement of defense on plea of guilty was the State's recommendation that Blacketer receive a SSOSA sentence and complete sex offender perpetrator treatment. The trial court sentenced Blacketer on July 16, 2018. At the plea hearing, the trial court engaged in a colloquy with Blacketer, confirming that he had a full understanding of the consequences of his guilty pleas. Defense counsel specifically informed the trial court that he had reviewed the consequences with Blacketer, including what the SSOSA program involves and "all the collateral, firearms, sex offender registration issues that are involved [], as well as the sex offender treatment, the DOC supervision." Clerk's Papers (CP) at 268. The trial court found that the guilty pleas were made knowingly and voluntarily and accepted the pleas.

The trial court granted Blacketer a SSOSA and sentenced Blacketer to 51 months confinement, suspended. The trial court ordered Blacketer to undergo and successfully complete an outpatient sex offender treatment program. Specifically, the judgment and sentence stated:

> The defendant shall enter into and make progress towards successfully completing a program offering State certified specialized treatment for problems of sexual deviance within 30 day of release and sign all releases necessary to ensure the CCO can consult with the treatment provider to monitor progress and compliance.

CP at 102.

In February 2019, the State filed a motion to revoke Blacketer's SSOSA sentence based on his failure to comply with the conditions of his sentence. In September 2019, Blacketer filed a motion under CrR 4.2(f) and CrR 7.8(b)(1) to withdraw his guilty plea. Blacketer argued that

the cost of sex offender treatment was a direct consequence of his guilty plea of which he was not informed.

The trial court held a hearing on the State's motion to revoke the SSOSA sentence and Blacketer's motion to withdraw his guilty plea. As to the State's motion to revoke, the trial court found that Blacketer had failed to report as required since September 6, 2018, failed to take a polygraph test as required, failed to be available for drug and alcohol testing since March 6, 2019, and failed to enter into or participate in sexual deviancy treatment as required by his SSOSA sentence. The trial court concluded that Blacketer failed to comply with the terms and conditions of his SSOSA sentence and revoked the SSOSA sentence and ordered Blacketer to be committed to the DOC for 51 months.

As to Blacketer's motion to withdraw his guilty plea, the trial court reviewed the evidence submitted, and entered findings of fact and conclusions of law. The court concluded that sex offender treatment is a collateral consequence, not a direct consequence, of a plea to a sex offense. The trial court further concluded that "[e]ven if sex offender treatment were a direct consequence, [Blacketer] was fully advised of the rights and the responsibilities that he had as part of the plea agreement he entered into." CP at 280. Accordingly, the trial court denied Blacketer's motion to withdraw his guilty plea.

Blacketer appeals the trial court's order denying his motion to withdraw his guilty plea.

ANALYSIS

Blacketer argues that the trial court erred by denying his CrR 7.8 motion to withdraw his guilty plea because he was not informed that he would be responsible for the cost of sex offender treatment. We hold that the trial court did not err.

Generally, we review a trial court's decision on a CrR 7.8 motion to withdraw a guilty plea for abuse of discretion. *State v. Buckman*, 190 Wn.2d 51, 57, 409 P.3d 193 (2018). But where, as here, the request for withdrawal is based on a claimed prejudicial constitutional error, we review the court's decision de novo. *Buckman*, 190 Wn.2d at 58.

A court must allow a defendant to withdraw a guilty plea when necessary to correct a manifest injustice. CrR 4.2(f); *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 595, 316 P.3d 1007 (2014). "Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). A defendant does not enter a guilty plea knowingly or voluntarily when it is based on misinformation about the direct sentencing consequences. *State v. Robinson*, 172 Wn.2d 783, 790, 263 P.3d 1233 (2011). Enforcing a plea agreement that was not entered knowingly, voluntarily, and intelligently violates due process and results in a manifest injustice. *Mendoza*, 157 Wn.2d at 587.

A motion to withdraw a plea after entry of judgment is a collateral attack governed by CrR 7.8, which allows the court to relieve a party from final judgment for reasons including mistake, newly discovered evidence, or any other reason justifying relief. *Buckman*, 190 Wn.2d at 60. "On collateral review, when the claimed error is 'a misstatement of sentencing consequences,' we require the petitioner to show 'actual and substantial prejudice.'" *Buckman*, 190 Wn.2d at 60 (quoting *Stockwell*, 179 Wn.2d at 598-99).

For a defendant seeking to withdraw a guilty plea, that means showing "that a rational person in his situation would more likely than not have insisted on proceeding to trial."

*Buckman*, 190 Wn.2d at 71. The actual and substantial prejudice inquiry is "an objective, rational person inquiry, rather than a subjective analysis." *Buckman*, 190 Wn.2d at 66. "'[A] bare allegation that a petitioner would not have pleaded guilty if he had known all the consequences of the plea is not sufficient to establish prejudice.'" *Buckman*, 190 Wn.2d at 67 (quoting *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 782, 863 P.2d 554 (1993)).

Here, Blacketer fails to show actual and substantial prejudice. Blacketer makes no argument that a rational person would more likely than not have insisted on proceeding to trial had they known they would be responsible for the cost of sex offender treatment. Indeed, Blacketer does not even contend that *he* would have chosen not to plead guilty. Blacketer was initially charged with first degree child rape and third degree child rape, which, if convicted, would have resulted in a significantly longer sentence. *See* RCW 9.94A.510, .515. Because Blacketer cannot show that a rational person in his situation would more likely than not have insisted on proceeding to trial, Blacketer fails to show that the trial court erred by denying his CrR 7.8 motion to withdraw his guilty plea.

STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Blacketer argues that his due process rights were violated by the court reporter's delay in transcribing the report of proceedings from his hearing. We disagree.

When a state provides a constitutional right to appeal and establishes appellate courts as an integral part of the criminal justice system, an appeal must comport with due process. *State v. Burton*, 165 Wn. App. 866, 876, 269 P.3d 337 (2012). "Washington guarantees the right to appeal criminal prosecutions, and substantial delay in the appellate process may constitute a due

process violation." *State v. Lennon*, 94 Wn. App. 573, 577, 976 P.2d 121 (1999). To determine whether appellate delay amounts to a due process violation, Washington courts apply a modified version of the four-part test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). *Lennon*, 94 Wn. App. 573, 577-78, 976 P.2d 121 (1999). This test requires us to examine (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in pursuing the right to appeal, and (4) the prejudice to the defendant. *Lennon*, 94 Wn. App. at 578.

"The length of the delay acts as a triggering mechanism, meaning that unless the delay is unreasonable under the circumstance, there is no necessity to inquire further." *Lennon*, 94 Wn. App. at 578. In *Lennon*, Division III of this court determined that a court reporter's 10-month delay in preparing the report of proceedings fell far short of a due process violation. 94 Wn. App. at 578. Here, most of the report of proceedings was prepared and filed with this court on time. However, one court reporter failed to file the report of proceedings from Blacketer's June 2018 hearing despite numerous attempts by counsel and this court to contact her and the repeated imposition of sanctions. During the unprecedented COVID-19 pandemic, the court reporter moved from Thurston County to eastern Washington and never filed the hearing transcript. Eight months after the transcript was due, counsel agreed to use the transcript filed in the clerk's papers, and the appeal proceeded. While we empathize with Blacketer's frustration, the eight-month delay was not unreasonable under the circumstances. Accordingly, there is no necessity to inquire further.

No. 54121-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, J.

We concur:

Lee, C.J.

Cruser, J.